In re ESTATE OF ALMA I. SMITH, Deceased.—(PAUL D. OGLE et al., Plaintiffs-Appellees and Cross-Appellants, v. JAMES ELVIN OGLE, Indiv. and as Ex'r under the Will of Alma I. Smith, et al., Defendants-Appellants and Cross-Appellees.—In re ESTATE OF OSCAR H. SMITH, Deceased.—(PAUL D. OGLE et al., Plaintiffs-Appellees and Cross-Appellants, v. JAMES ELVIN OGLE, Indiv. and as Ex'r under the Will of Oscar H. Smith, et al., Defendants-Appellants and Cross-Appellees.)

Fourth District    No. 14977

Opinion filed January 23, 1979.—Rehearing denied February 21, 1979.

TRAPP, J., specially concurring.

Bellatti, Fay, Bellatti & Bone, of Jacksonville, and Robert M. Bellatti, of Springfield, both for appellants.

Carl O. Hoffee, of Barber & Barber, of Springfield, for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:

Will construction.

The court below—on the pleadings—found that the provisions of the will did not cover the events that occurred and that the laws of intestacy must govern.

The trial judge was correct.

We affirm.

Oscar Smith died suddenly of a stroke on April 10, 1977, and his wife, Alma, died 15 days later from a lingering cancer illness. The following dispositive provisions were contained in their reciprocal wills:

"SECOND: I give, devise and bequeath all of my estate, real, personal and mixed wheresoever situated to my wife, ALMA I. SMITH, if she [my husband, OSCAR H. SMITH, if he] shall survive me within thirty (30) days from the date of my death.

THIRD: I direct that if my wife, ALMA I. SMITH, [my husband, OSCAR H. SMITH] and I die in or from a common disaster that my estate be equally divided between my nephews, JAMES ELVIN OGLE, and LELAND OGLE, share and share alike."

James Ogle was named executor in section 4 of their wills.

The plaintiffs, who are Alma's living brothers and sister and the children of her deceased brother, reason that since Oscar and Alma did not die in a common disaster, the provisions of section 3 did not take effect. Because there is no other dispositive provision in the will, they take Alma's estate by intestacy, just as she would take Oscar's estate by intestacy since she did not survive him by 30 days. The defendants, who are the nephews James and Leland Ogle, argue the will shows a gift of the entire estate by implication.

Illinois courts have been confronted with similar dispositions in *Bradshaw v. Lewis* (1973), 54 Ill. 2d 304, 296 N.E.2d 747; *Schuyler v. Zwiep* (1976), 42 Ill. App. 3d 91, 355 N.E.2d 554; and *In re Estate of Blansett* (1975), 28 Ill. App. 3d 552, 328 N.E.2d 593. In all of these cases the courts have refused to recognize a gift by implication, holding that the provisions of the wills did not create an implication so strong as to leave no reasonable doubt as to the testators' intentions. However, defendants

claim the present case is distinguishable because it involves reciprocal wills and not joint and mutual wills as was the case in *Bradshaw, Schuyler,* and *Blansett.*

■■ We do not agree. Under either type of instrument there still exists a reasonable doubt concerning the testator's intent.

Defendants also note that James Ogle was nominated executor, that the will contained both a 30-day and a common-disaster provision, and that the testators were fond of the defendants but disliked certain of the plaintiffs. The *Blansett* case recognized that the naming of an executor is not conclusive of donative intent because they are usually chosen because of their availability, skill, and trustworthiness. And although by the use of both the 30-day and common disaster provisions the testators may have intended that section 3 gifts should become effective if no spouse survived by 30 days, that intention is not expressed clearly in the will. Finally, *Blansett* held that the testator's intent should be ascertained from the will itself. In the case before us, even if the defendants' well pleaded allegations were considered, we do not believe they show that the testators intended that the estate should go to the defendants upon their deaths. Thus, the holding of these three cases compels us to affirm the trial court's decision that the estate pass by intestacy.

The next issue presented concerns defendants' attorneys' fees allowed by the trial court. After defendants had filed the wills for probate noting themselves as devisees of the estates, plaintiffs filed a suit for declaratory judgment contending that defendants had no interest in the estate. James Ogle, as executor, filed a counterclaim seeking construction of the will and he and Leland Ogle, as individuals, also filed a counterclaim alleging that a genuine controversy existed as to the proper construction of the wills. Although the trial court found for the plaintiffs, the court awarded defendants attorneys' fees because there was a genuine controversy concerning the meaning of the wills.

■■■ As a general rule the costs of litigating a will construction case are borne by the estate even if the construction adopted is adverse to the parties seeking the legal fees because the testator's ambiguous expression of his intention necessitated the action. (*Orme v. Northern Trust Co.* (1962), 25 Ill. 2d 151, 183 N.E.2d 505.) The determining factor is whether there is an honest difference of opinion and this determination rests within the discretion of the trial court. *Stuart v. Continental Illinois National Bank & Trust Co.* (1977), 68 Ill. 2d 502, 369 N.E.2d 1262; *Ingalsbe v. Gough* (1971), 2 Ill. App. 3d 681, 277 N.E.2d 149.

Although the trial judge here relied on *Bradshaw, Schuyler,* and *Blansett,* it stated that the will needed construction due to the confusing 30-day provision and simultaneous death clause which names the defendants, but does not contain a residuary clause. We, too, find that the

precedent of these cases controls but agree that the facts of this case presented an honest dispute which required the will construction.

Defendants claim that the counterclaimants are not allowed attorneys' fees. In *Waxenberg v. Brown* (1939), 299 Ill. App. 225, 20 N.E.2d 150, the court noted that the heir's motive in filing his cross-bill was purely personal and not for the benefit of a trust fund. However, in the present case, James Ogle filed a counterclaim for a will construction as executor, and the work of his attorneys on this aspect was inseparable from their work on the counterclaim filed by Ogle in his personal capacity. The court noted that it was all one set of facts which required construction whether it was labeled a declaratory judgment or a will construction. Although (as recognized in *Ingalsbe*) James Ogle hoped to benefit financially from the litigation as indicated by his personal counterclaim, the testator created the necessity for the litigation which was essentially a will contest.

The trial court did not abuse its discretion in awarding the defendants the attorneys' fees incurred in seeking a resolution of the dispute.

Affirmed.

GREEN, J., concurs.

Mr. JUSTICE TRAPP, specially concurring:

From the face of the documents, there is no apparent reason to conclude that two elderly people intended to execute their reciprocal wills to provide that their property go to the named beneficiaries only upon the event that they die in a common disaster.

While the principal opinion functions within the established rules of case law, it is cause for distress to observe that, as in *Bradshaw* and *Blansett* heretofore, counsel prepare such defective wills that the apparent intentions of the testators is frustrated.