JOAN GRACE LARISON et al., Plaintiffs-Appellants, v. DONNA KAY RECORD, Defendant-Appellee.

Third District    No. 3—85—0280

Opinion filed February 21, 1986.

478

Dwight L. Shoemaker, of Aledo, for appellants.

Karl Bredberg, of Aledo, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiffs, Joan Larison and Carol Schaubroeck, filed an action in the circuit court of Mercer County against defendant Donna Record, seeking construction of the will of George and Anna Berge. Cross-motions for dismissal, seeking different constructions of the will, were filed by the defendant. The court entered judgment on the pleadings in favor of the defendant. Plaintiffs appeal.

On January 21, 1961, George C. Berge and Anna C. Berge exe-

cuted their last will and testament, leaving their property first to each other and then, in the event they die simultaneously, to their children: Joan Grace Headley, Carol Jean Schaubreck, and Donna Kay Record, to share equally. (Joan Grace Headley is now known as Joan Grace Larison.) The will made no provision for a bequest upon the death of the survivor if the testators' deaths were not simultaneous. Both George and Anna had previously been married, plaintiffs are the daughters of George and defendant is the daughter of Anna.

In July 1977 George Berge died.

In July 1983 Anna Berge died.

In November 1983 the will was admitted to probate.

The following relevant provisions were contained in what is labeled their "Mutual Will."

"\*\*\* We, George C. Berge and Anna C. Berge \*\*\* being of sound mind \*\*\* and desirous of disposing of our property \*\*\* after our deaths, respectively, do hereby \*\*\* declare this to be our \*\*\* joint and reciprocal last Will and Testament \*\*\*,

\* \* \*

Second: We give \*\*\* each to the other, respectively, all \*\*\* of our estate \*\*\* jointly and severally \*\*\* seized and possessed \*\*\* of the one who may die first to the survivor, to be his or her sole and absolute property forever.

Third: In the event that we meet our death in a common disaster \*\*\* we hereby give \*\*\* all of our property \*\*\* to our beloved children \*\*\* to share equally."

Plaintiffs contend the will of George and Anna Berge is a joint and mutual will invoking the construction rule that a court should not hesitate to insert, transpose, or disregard words in a will to arrive at the true intention of the testator by declaring the devise to the surviving spouse in the second paragraph to be a life estate.

In Illinois, the execution of a joint and mutual will by a husband and wife is *prima facie* evidence of a contract not to revoke the will. Merely mutual wills do not afford such evidence, and specific, clear, and convincing evidence is necessary. (*In re Estate of Marcucci* (1973), 54 Ill. 2d 266, 296 N.E.2d 849.) The Illinois Supreme Court has held that the taker of property subject to a contract not to revoke the joint and mutual will has only a life estate in that property, at least where there is an express prohibition against sale of the property. Thus, any lifetime gift of property is only a gift of a life estate, and the remainder passes under the will as contracted. *First United Presbyterian Church v. Christenson* (1976), 64 Ill. 2d 491, 356 N.E.2d 532.

Wills may be joint or mutual, or both joint and mutual. A "joint will" is one where the same instrument is made the will of two of more persons and is jointly signed by them. "Mutual will" may be defined as the separate wills of two persons which are reciprocal in their provisions. A will that is both joint and mutual is one executed jointly by two or more persons, the provisions of which are reciprocal, and which shows on its face that the devises are made one in consideration of the other. (*Frazier v. Patterson* (1909), 243 Ill. 80, 90 N.E. 218.) The word "joint" goes to the form, and the word "mutual" goes to the substance of what is called a "joint & mutual" will. 97 C.J.S. *Wills* sec. 1364 at 290 (1957).

The testators were husband and wife who made identical reciprocal provisions for each other in a single instrument; each gave up the right of absolute ownership of property held jointly and severally, each had children by a previous marriage, and the instrument appears to have intended that all the children should receive equal treatment; the property of both testators is treated as a common pool and the dispositions are made by both rather than by each of them individually. This will, being a single instrument and signed by both parties, was labeled a mutual will, and they recognized that it was a joint and reciprocal will since the first paragraph contains the words "do hereby *** declare this to be our *** joint and reciprocal last will and testament ***." These factors considered together convince us that a joint and mutual will was executed.

■ Under a fair construction of this will, the absolute and full fee simple title vested in the wife on the death of her husband under the second clause of the so-called mutual will, and the wife had the full right to dispose of the property as she saw fit.

It is difficult to find language more definite for the purpose of showing a devise of an absolute estate in fee to the survivor than is contained in clause second. When the word "Absolute" is used it would have required great clarity of expression in a later clause of the will to cut down the devise to that of a life estate. No such words are used in the instant will.

However, since Anna failed to revoke the "mutual will" by executing a new will, the provisions in the so-called "mutual will," in issue here, are effective and warrant construction.

■ In construing a will, the intention of the testator is to be collected from the words of the will itself, and read in the light of the surrounding circumstances. In this respect the duty of the courts is to ascertain the intention of the testator as to the disposition of his property, and, if legal, to carry it into effect. The courts are not re-

quired to adhere rigidly to precedents, and little aid is to be derived from a resort to judicial determinations in other cases apparently similar. Adjudged cases may, however, properly be argued from, if they establish general rules of construction, and the courts also recognize the importance of adhering to a course of decisions in the construction of wills where their authority has established a rule of property on which many estates depend (80 Am. Jur. 2d *Wills* secs. 1128 and 1131 (1975)).

■ Where a will has been executed, the reasonable and natural presumption is that the testator intends to dispose of his entire estate. Construction of wills leading to intestacy are not generally favored and will be rejected where the language is reasonably effective to dispose of the entire estate, and liberal interpretation is employed to that end. Therefore, in the construction of wills, that interpretation is to be adopted, if possible, which avoids intestacy unless it clearly appears that the testator intended to die intestate. 80 Am. Jur. 2d *Wills* sec. 1175, at 287 (1975).

From the face of the documents at bar, we see a general intention of the testators in the first paragraph to make a complete testamentary disposition of the joint and several property, such general intent is allowed weight in determining what was intended. Aided by the presumption that it was the intention of the testators to dispose of their estate and not die intestate, clause third provides, in the event of a common disaster, for a distribution of the entire estate among the three daughters equally.

There is a presumption against any intention on the part of a testator to disinherit his legal heirs. This presumption is recognized especially in the absence of unfriendly relations between the testator and his descendants. If the will is interpreted as not to dispose of all the property, the curious result is reached that the intestate disposition of the entire estate would descend to the children of the last to die. Interestingly, if the wife had died first and the husband last the arguments would be reversed.

■ It seems reasonable to infer from the disposition that equality among the children was intended, and we see no apparent reason to conclude that these two people intended to execute their reciprocal wills to provide that their property go to all the individual daughters equally only upon the event that they die in a common disaster. While the fact that a particular testamentary construction will give one of the testators' relatives more· than another in an equal degree of relationship is not conclusive against it, the opinion has been expressed that a will should be given such a construction as will admit all the

testator's children to share equally in his property (*Dahmer v. Wensler* (1932), 350 Ill. 23, 182 N.E. 799; *Yeates v. Yeates* (1929), 179 Ark. 543, 16 S.W.2d 996). Equality among heirs being the testators' object, it is difficult to subscribe to a construction which would disinherit two of the daughters and pass the entire estate to only one, for thereby inequality would be permitted where equality was intended. It is, rather, more consistent to avoid any such construction which would frustrate the obvious intention.

Defendant in her brief relies on the holding of *Bradshaw v. Lewis* (1973), 54 Ill. 2d 304, 296 N.E.2d 747, and two cases following the *Bradshaw* decision; *In re Estate of Blansett* (1975), 28 Ill. App. 3d 552, 328 N.E.2d 593, and *In re Estate of Smith* (1979), 68 Ill. App. 3d 30, 385 N.E.2d 363. In this line of cases, a husband and wife executed a joint will leaving everything to the survivor of them, providing for a bequest to third parties in case of simultaneous deaths of the testators, but making no provision for a bequest upon the death of the survivor if the testators' deaths were not simultaneous. In all cases, one testator survived the other. In each case it was held that the death of the survivor resulted in intestacy rather than in a gift by implication to the third parties named in the will.

In *Bradshaw v. Lewis* (1973), 54 Ill. 2d 304, 296 N.E.2d 747, upon simultaneous deaths, the will gave the farm, machinery and livestock to the son and the residue of the estate to the five daughters. During her lifetime, the wife gave her undivided one-half interest in the farm, which was held in joint tenancy, to the son. The husband survived and upon his death the will was admitted to probate. The suit was filed to set aside the wife's deed to her son and to partition the farm. Upon hearing, evidence was presented that the son had farmed the land, replaced a destroyed barn with his own funds, and paid his mother's funeral expenses. The trial judge ruled that the will made a gift by implication to the son of the farm, machinery and the livestock.

The supreme court ruled that the estate passed intestate. The opinion, consistent with the ruling in *Dollander v. Dhaemers* (1921), 297 Ill. 274, 130 N.E. 705, that the law favors that construction of a will which conforms most nearly to the general law of inheritance, noted that "the theory of a devise by implication of the farm to the son would result in his receiving the entire farm, livestock and machinery plus a share in the residue of the estate equal to that of the daughters—a result clearly not intended." Here, absent a gift by implication, the excluded heirs would be persons whom it is evident the testators had intended to include.

*Bradshaw v. Lewis* (1973), 54 Ill. 2d 304, 296 N.E.2d 747, cited

by defendant, while bearing on the instant case, is nevertheless distinguishable and cannot be applied where an intention to the contrary clearly appears. Our decision rests on a reasoned interpretation of the language of the will in light of circumstances contained therein, supported by the well-settled rules of construction.

For these reasons, we reverse the judgment of the circuit court of Mercer County and remand the cause to that court for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings.

HEIPLE, P.J., and WOMBACHER, J., concur.